Virginia Harbour TOLER et
al., Appellants,

v.

Frank A. HARBOUR, Appellee.

No. 9011.

Court of Civil Appeals of Texas,
Amarillo.

Oct. 24, 1979.

Rehearing Denied Nov. 21, 1979.

Manning Holland, Amarillo, for appellants.

Garland D. Sell & Associates, Garland D. Sell and Patrick A. Pirtle, Amarillo, for appellee.

REYNOLDS, Chief Justice.

Granting plaintiff's motion, the trial court summarily decreed that a will, which states plaintiff shall "have and hold a life-estate only" in realty and "at his death his heirs take the fee simple title," vested, by operation of the rule in Shelley's case, the fee simple title in plaintiff. The non-moving defendants did not present to the court any issue which would avoid plaintiff's entitlement to the summary judgment established by the proof. Affirmed.

Plaintiff Frank A. Harbour instituted this action to secure a declaratory judgment construing the last will and testament of W. A. Harbour, deceased. Specifically, Frank sought a judgment declaring that the fourth article of the decedent's will vested in him the fee simple title to the East 167 acres of Section 1114, Block 43, H&TC Ry. Co. Survey, Ochiltree County, Texas.

The will of W. A. Harbour was executed 3 November 1945 and admitted to probate on 13 May 1963. The will, which gave to his wife, Mattie Harbour, "a life-estate in all of my real estate," also provided:

Third: Upon the passing from this life of the said Mattie Harbour, it is my will and I so direct that my son, John K. Harbour take the fee simple title to the North 240 acres of the West 480 acres of Section 1114, Block 43, H.&T.C.R.R.Co. in Ochiltree county, Texas; and that my daughter, Anna Marie Harbour Smith take the fee simple title to the South 240 acres of the said West 480 acres of said Section 1114, Block 43, H.&T.C.R.R.Co., in Ochiltree county, Texas.

Fourth: It is my will, and I so direct that my son, Frank A. Harbour, shall, at the passing of my wife Mattie Harbour, have and hold a life-estate only in and to the East part of said Section 1114, Block 43, H.&.T.C.R.R.Co., in Ochiltree county, Texas, being all of the residue of said section not herein bequeathed to John K. Harbour and Anna Marie Harbour Smith, above, and containing 167 acres, more or less. Said East part being where I now reside; at his death his heirs take the fee simple title in and to said tract of land.

As defendants to his action, Frank named Virginia Harbour Toler, Harold Leon Harbour, Joy Harbour Sibrel and Patsy Harbour Anglin—who are his children and who, he alleged, would be the apparent takers of fee simple title to the property passing under the fourth article but for the operation of the rule in Shelley's case—and the First National Bank of Perryton, Texas, receiver. The bank had been appointed receiver of the 167-acre tract for mineral development pursuant to Tex.Rev.Civ.Stat.Ann. art. 2320c (Vernon 1971) in Cause No. 4827 pending on the docket of the trial court.

Frank's children filed an original answer consisting of allegations which have no pertinence to the matters submitted on this appeal.[1] The bank answered that it had received certain monies in its capacity as receiver and prayed that if Frank should prevail, the judgment should specifically provide for the payment of income tax, if any, receiver's fees and the expenses out of the funds, with the balance, if any, payable to Frank.

After all defendants answered and the children responded to Frank's interrogatories and requests for admissions of fact, Frank moved for summary judgment. Attaching a certified copy of W. A. Harbour's probated will to his motion, Frank alleged, in essence, that the operation of the rule in Shelley's case on the language of the will entitled him to summary judgment as a matter of law, the answer of the defendants having failed to state a defense to defeat the summary judgment.

In response to the summary judgment motion, the children filed an answer, attaching affidavits. The answer consisted of allegations that: first, there is a genuine issue of material fact as to the intention of testator W. A. Harbour, particularly in using the word "heirs;" and, second, the entire will itself clearly sets forth the testator's intent that Frank was to have only a life estate and, at Frank's death, his heirs, by which the testator meant Frank's children, were to take the fee simple title. The thrust of the affidavits was that the testator had orally declared his intent that Frank take only a life estate and that Frank's children take the fee simple title.

The court heard the motion for summary judgment and argument of counsel. Four-

1. The original answer is shown in a supplemental transcript tendered after the submission of this cause by the children, who moved, and Frank opposed, its filing. The motion was carried forward for consideration with the merits of the appeal. Other than the original answer, the tendered supplemental transcript is composed of copies of some instruments filed in the receivership proceedings in Cause No. 4827 and in the probate proceedings in the Estate of W. A. Harbour, deceased. Except for the original answer, none of the instruments was a part of the summary judgment record before the trial court, and none of them enhances the merits of any point of error or affects the disposition of the appeal. In view thereof, the motion to file the supplemental transcript is granted only to the extent that the original answer is accepted for filing.

teen days later, the children filed their first amended original answer to Frank's original petition. By this answer, the children asserted that all issues and facts set forth in Frank's original petition were fully and finally litigated between the same parties in a judgment, a certified copy of which was attached, rendered in Cause No. 4827, and prayed that Frank's original petition be dismissed, res judicata.

Thereafter, the court rendered summary judgment. Reciting, *inter alia,* in the judgment that by virtue of the will and the operation of the rule in Shelley's case Frank was devised a fee simple title to the 167-acre tract, the court decreed that Frank owns a fee simple title to the real estate without limitation.[2]

█ Only the children have appealed from the judgment.[3] For reversal of the summary judgment, they submit that: (1) the former judgment rendered in Cause No. 4827 determined the ownership of the real estate and is res judicata of this action; and (2) the court erred in granting summary judgment because there are genuine issues of material facts. Under the latter submission, they narrow the consideration to the issue of the testator's intent, arguing that the will itself, together with the affidavits, conclusively show that the testator did not use the word "heirs" in its technical sense, and intended Frank to have a life estate only and his children to take the fee simple title.

### Res judicata

Without academically discussing the children's contention that the doctrine of res judicata bars this action, it suffices to state that the affirmative defense of res judicata is not available for consideration as a ground for reversal of the summary judgment. This is for the reason that the defense was never presented to the trial court in avoidance of the summary judgment.

█ Res judicata is an affirmative defense which must be specifically pleaded, Tex.R.Civ.P. 94; otherwise, the defense is waived. *Allandale Nursing Home, Inc. v. John Bremond Co., Inc.,* 514 S.W.2d 958, 959 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.). Although the children did, by an amended answer filed two weeks after the summary judgment motion hearing, seek the dismissal of Frank's original petition on conclusional allegations of res judicata, the defense of res judicata was not expressly presented to the trial court by written answer or other response to Frank's motion for summary judgment. Indeed, the children concede that res judicata was not affirmatively raised to defeat the summary judgment when, in their brief, they state, "We do not think the defendants were required to plead the judgment rendered at the prior hearing of the court in bar to further proceedings . . . ."

In the context of the summary judgment rule Tex.R.Civ.P. 166–A, an answer generally filed in response to a petition does not expressly present to the trial court any issue in response to a summary judgment motion; and, by the rule's explicit direction, any issue not expressly presented to avoid the movant's entitlement to summary judgment shall not be considered on appeal. The *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex., 1979). The first point of error is overruled.

---

2. The judgment is silent on the matter of the bank's prayer for disposition of the funds it holds as receiver. Under the rationale of *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex.1966), it will be presumed the prayer was denied; but, this is not tantamount to saying that the proper disposition of the funds cannot be ordered pursuant to Tex. Rev.Civ.Stat.Ann. art. 2320c, § 2C (Vernon 1971) in the receivership proceedings in Cause No. 4827.

3. At the insistence of the children, the trial court made and filed eight findings of fact and seven conclusions of law. By the very nature of summary judgment proceedings, findings of fact are inappropriate, for the only issue is whether there is a genuine issue of material fact. *Matter of Estate of Furr,* 553 S.W.2d 676, 679 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.); *Reynolds v. Park,* 521 S.W.2d 300, 307 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.). Accordingly and because the particular findings are not mentioned on appeal, the factual findings are ignored.

### Rule in Shelley's case

■ Frank moved for, and the court granted, summary judgment on the ground that the rule in Shelley's case operated on the language of the will to vest fee simple title in him. The rule is expressed in the landmark case of *Hancock v. Butler,* 21 Tex. 804, 808 (1858), from which the following, with omissions not material here, is quoted:

'[W]hen a person takes an estate of freehold, legally, or equitably, under a . . . will . . . and in the same instrument, there is a limitation, by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons, to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate.' 4 Kent, 215. This result would follow, although the [will] might express that the first taker should have a life estate only. It is founded on the use of the technical words, "heirs," or "heirs of his body," in the . . . will.

The rule existed in Texas as a positive rule of law and not as a rule of construction, *Sybert v. Sybert,* 152 Tex. 106, 254 S.W.2d 999, 1000 (1953), until the legislature abolished the rule effective 1 January 1964. Tex.Rev.Civ.Stat.Ann. art. 1291a (Vernon Pamphlet Supp. 1963 to 1978). But the act of abolishment does not foreclose the application of the rule to W. A Harbour's will, which was executed and probated before 1 January 1964, for section 3 of the act exempts its application to conveyances taking effect prior to the effective date of the act.

■ Given the language of the will and the viability of the rule in Shelley's case, Frank is vested with the fee simple title to the realty, even if the testator intended otherwise. It would be superfluous to comment on the merits or demerits of the rule's application to the will, for the case of *Sybert v. Sybert, supra,* is squarely in point, refutes all of the children's contentions for non-application of the rule, and dictates that the summary judgment must be affirmed.

In *Sybert,* the Court confronted the same situation which is presented in this appeal. By his will, Mr. Sybert left all of his property to his wife for life and, at her death, willed to one son a life estate in a tract of land which was, after the son's death, "to vest in fee simple in the heirs of his body." Later, Mrs. Sybert died, leaving a will disposing of the land in the same manner and by the identical words copied from Mr. Sybert's will. When the son died, litigation ensued to determine whether the wills vested in the son a life estate only or a fee simple title.

The court held that the rule in Shelley's case must apply to the language of the wills to vest fee simple title in the son because there was no language, and the court could supply none, qualifying the words "heirs of his body," it being immaterial whether or not the testator so intended. 254 S.W.2d at 1001. The concurring opinion points out that there can be no doubt the two testators intended to leave a life estate only to their son, and the application of the rule in Shelley's case results in setting aside this intention. In fact, the opinion continues, every case in which the rule is applied results in setting aside the intention of the person making the instrument; nevertheless, when wills come within the rule, there is no escape from the rule's application. 254 S.W.2d at 1002.

Here, despite the intent of testator W. A. Harbour, he used no language, and we cannot supply any for him, qualifying his word "heirs" so it will not be read in its technical sense. Thus, the rule in Shelley's case operates on the language of W. A. Harbour's will to vest in Frank A. Harbour a fee simple title to the realty devised in the fourth article of the testator's will. The second point is overruled.

The summary judgment is affirmed.

COUNTISS, J., not participating.