**FLORIDA POWER & LIGHT CO., Plaintiff,**

v.

**McGRAW EDISON CO., Defendant/Third Party Plaintiff,**

v.

**NGK–LOCKE, INC., Third Party Defendant.**

**No. 83–1071–CIV.**

United States District Court, S.D. Florida.

Oct. 6, 1988.

Stephen Riley, Hill, Neale & Riley, Ft. Lauderdale, Fla., Gerard P. Harney, Cozen, Begier & O'Connor, Philadelphia, Pa., for plaintiff.

James E. McDonald, McDermott, Will & Emery, Miami, Fla., for defendant/third party plaintiff.

HOEVELER, District Judge.

THIS CAUSE is before the Court upon the Defendant McGraw Edison Company's renewed motion for summary judgment.

This action arises from the explosion of a transformer bought by plaintiff, Florida

**618**

Power & Light Company ("FPL") from the defendant, McGraw–Edison Company ("McGraw"). Plaintiff seeks to recover damages on theories of negligence, strict liability and breach of express and implied warranty. Defendant moved for summary judgment. After the motion was fully briefed, the court heard arguments on December 15, 1986 and issued an order on February 17, 1987. The order denied defendant McGraw's motion for summary judgment without prejudice, and ruled that because Florida law governs the statute of limitations for the warranty claim, plaintiff's complaint was timely; that Pennsylvania law governs the contract's limitation of remedies; and that Florida law governs the tort claims. The court reserved ruling on the issue of whether FPL could proceed on theories of strict liability and negligence until the Florida Supreme Court ruled on questions certified to it by the Eleventh Circuit Court of Appeals. *See Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So.2d 899 (Fla.1987).[1] The Florida Supreme Court has answered the certified questions. *Id.* Defendant McGraw has renewed its motion for summary judgment in light of the *Westinghouse* decision, and incorporated its prior motion by reference. McGraw–Edison's Renewed Motion for Summary Judgment and Memorandum of Law in Support at 2.

*Background*

In September 1971, as part of the construction plans for its generating station at Port Manatee, Florida, FPL submitted proposed specifications for a generator step-up transformer to McGraw, a Delaware corporation with its principal place of business in Canonsburg, Pennsylvania. In October 1971 and January 1972, McGraw submitted design proposals to FPL, incorporating FPL's specifications. On January 12, 1972, FPL ordered two transformers from McGraw to be built according to the agreed-upon specifications. McGraw's form "Conditions of Sale" contained a disclaimer of implied warranty provision, and limited damages to repair or replacement within one year.[2] The transformers were delivered to FPL in 1975. On June 17, 1981, one transformer was destroyed by a fire apparently caused by the explosion of a bushing inside the transformer.

FPL brought suit against McGraw in this Court on April 27, 1983. This Court has diversity jurisdiction under 28 U.S.C. section 1332. FPL's complaint states causes of action against McGraw in negligence, strict liability and breach of express and implied warranties. FPL asserts that a defective bushing caused an explosion within the transformer and the subsequent fire. McGraw filed a third-party complaint against NGK–Locke, Inc. ("NGK"), manufacturer of the porcelain component of the bushing in question.

In its renewed motion for summary judgment, McGraw maintains that because no injury to person or property occurred other than to the transformer itself, FPL's damages amount to mere "economic loss"[3] and

---

1. This court also reserved ruling on the warranty claim until the Florida Supreme Court ruled in *Westinghouse*, because the availability of a tort remedy would diminish the importance of the warranty count. Order on Defendant's Motion for Summary Judgment at 9.

2. The contract provides in pertinent part:
   *Warranty:* The seller warrants that the equipment to be delivered hereunder shall be of first class quality and workmanship throughout, and will be as described in the specifications. No other warranty, except of title, shall be implied, and the Seller's liability with respect to the equipment furnished, whether under this warranty, or otherwise, shall be limited to repairing and/or replacing, during the period and upon the terms and conditions outlined in the following paragraph:

   *Repair or replacement:* Seller agrees and shall have the right to repair ... or furnish without charge ... a similar part to replace any portion of the equipment which, within one year after shipment is proven to have been, at time of shipment, defective as to material, workmanship or design.... The liability of the Seller (except as to title) arising out of the supplying of said equipment or its use, whether on warranties or otherwise, shall not, in any case, exceed the cost of correcting proven defects in said equipment, and, upon completion of said one year, all such liability shall terminate.

3. Economic loss refers to pecuniary damage that occurs through loss of value or use of the goods sold or the cost of repair and together with consequential lost profits when there has been no claim of personal injury or damage to

are therefore not recoverable in tort. Defendant's Brief in Support of Renewed Motion for Summary Judgment, at 2–3. FPL denies that it suffered mere economic loss, the proper remedy for which it concedes is in contract. Plaintiff's Brief in Opposition at 1. Rather, FPL claims that the concrete wall adjacent to the transformer and the concrete curbing at its base were blackened by the fire and piping around the transformer had to be re-welded. *Id.* FPL contends that this property damage is sufficient to distinguish the instant case from *Westinghouse. Id.* at 2.

McGraw, on the other hand, claims that *Westinghouse* is directly on point, and that the *de minimis* damage caused to the smoke damaged concrete and the piping is insufficient to take the instant case outside the *Westinghouse* rule. Furthermore, McGraw contends that because FPL did not plead such damages in its complaint, it cannot do so at this time.[4] FPL asserts that under the liberal notice pleading rules its allegations were sufficient to give McGraw fair notice of its claim, and that such damage was not a relevant factual question until the Florida Supreme Court ruled in *Westinghouse.* Plaintiff's Response to Defendant's Reply to Plaintiff's Brief in Opposition to Defendant's Renewed Motion for Summary Judgment at 2.

*Discussion*

### I. The Tort Claims

Florida law precludes the recovery of economic loss without a claim of personal injury or damage to property other than the product itself. *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899, 900 (Fla.1987). FPL argues that the instant case is distinguishable because in *Westinghouse* there was no claim of property damage other than that to the steam generators themselves. Here, FPL

contends that the smoke damage to concrete walls and curbing and the damage to adjacent pipes necessitating rewelding takes the instant action outside the *Westinghouse* rule.

[■] While the court did not address the issue of *de minimis* damage in *Westinghouse,* it did find the reasoning of the United States Supreme Court in *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), persuasive. *Westinghouse,* 510 So.2d at 901. In *East River,* the plaintiffs had alleged damage to piping when turbines malfunctioned due to design defects and improper installation. *East River,* 476 U.S. at 860, 106 S.Ct. at 2297. The Supreme Court found that because "all but the very simplest of machines have component parts," damage to the component parts cannot be sufficient property damage to bring the action into tort. *Id.* at 862, 106 S.Ct. at 2297. Otherwise, there would be property damage every time a machine damaged itself, a result that would eliminate the distinction between warranty and strict product liability. *Id.* Similarly, the concrete walls and curbing surrounding the transformer, and the adjacent connecting pipes were sufficiently related to the transformer's proper operation that they can be viewed as analogous to component parts. Thus, damage to these parts cannot be considered sufficient property damage to bring FPL's claim within the aegis of a tort action. The essence of FPL's claim is that the transformer failed to function properly, a claim that sounds in contract rather than in tort. The fact that the malfunctioning part caused an explosion does not alter the calculus. As the United States Supreme Court recognized, "[e]ven when the harm to the product itself

---

other property. *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 22, 403 P.2d 145, 150 (1965).

**4.** McGraw's motion to strike FPL's photographs of the damage is based on its contention that FPL has failed to properly authenticate them, and that they would therefore be inadmissible at trial and cannot be considered in a motion for summary judgment. McGraw Edison's Mo-

tion to Strike and Memorandum of Law in Support at 2. FPL contends that the affidavit of its plant manager was sufficient to authenticate the photographs but that in any case, striking the photographs would neither add to nor detract from the arguments of the parties. Plaintiff's Response to Defendant's Reply to Plaintiff's Brief in Opposition to Defendant's Renewed Motion for Summary Judgment at 2–3.

occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.* at 870, 106 S.Ct. at 2302.

Moreover, the policy considerations behind recovery in strict product liability are inapplicable here. Product liability originated from a desire to protect the public from dangerous products to a greater extent than could be achieved under warranty law. *Id.* Thus, safety concerns are at the heart of recovery in product liability.

> The manufacturer is liable whether or not it is negligent because public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. For similar reasons of safety, the manufacturer's duty of care was broadened to include protection against property damage.

*Id.* (quotations and citations omitted). The distinction between recovery in tort and in contract ultimately depends on the responsibility a manufacturer has undertaken in distributing its products. *Seely v. White Motor Co.*, 63 Cal.2d 9, 18, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (1965). Requiring a manufacturer to bear responsibility for losses where the only injury has been to the product itself would ultimately become a cost to the public, a cost that cannot be justified by a customer's needs for special protection. *East River*, 476 U.S. at 872, 106 S.Ct. at 2303. Those needs can be adequately met through the bargaining process. *Id.* Similarly, to permit recovery in tort where the only property damage has been minimal damage to surrounding structures and components necessary for proper operation of the machine would be unjustified. Ultimately, it is society that would bear the costs of such recovery, costs that are not justified by countervailing policy considerations where the parties are in position to protect themselves through contract.

## II. The Warranty Claims

This court determined that although the Florida statute of limitations applies to this action, Pennsylvania law governs any issues concerning the contract's limitation of remedies as well as construction of contractual terms. Order on Defendant's Motion for Summary Judgment at 6, 8.

The contract expressly limits damages for defective parts to repair or replacement within one year of purchase. *See supra* note 2. Therefore, the express terms of the contract clearly limit any damage caused by the defective bushing to repair or replacement within one year of purchase.

McGraw's Conditions of Sale also included a statement that

> Neither seller nor Purchaser shall be subject to special, indirect or consequential damages. Under no circumstances, implied or otherwise, is the Seller to be liable for more than the cost of the equipment sold.

The effectiveness of this limitation is governed by section 2–719 of the Uniform Commercial Code ("UCC"). *See* 13 Pa. Cons.Stat.Ann. section 2719 (Purdon 1984). Under section 2–719, parties may limit consequential damages providing the limitation is not unconscionable. *Id.* *See also Employers Liability Assurance Corp. v. Greenvill Business Men's Ass'n*, 423 Pa. 288, 224 A.2d 620 (1966) (a party may contractually eliminate or limit its liability for negligence if the exculpatory clause does not contravene public policy). Under Pennsylvania law, a limitation of damages may be imposed even if such a limitation was not expressly negotiated. *Posttape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751, 756 (3d Cir.1976). Therefore, even though FPL contends it did not negotiate the limitation provision, the limitation clause should be upheld.

■] Limitations similar to the ones at issue have been held valid under Pennsylvania law. *See Ebasco Services, Inc. v. Pennsylvania Power & Light Co.*, 460 F.Supp. 163, 211–13 (E.D.Pa.1978) (applying Pennsylvania law). Thus, McGraw's

contractual limitation of damages to the cost of the equipment is effective.

*Conclusion*

The controlling substantive law of Florida precludes tort recovery for strictly economic loss. The minimal damage to pipes and adjacent structures does not bring this case outside the purview of the rule. The warranty claims fail because of the express limitation provisions of the contract. Therefore, it is hereby

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be GRANTED. A final judgment will be entered by separate order on this day.

FINAL JUDGMENT

THIS CAUSE is before the Court upon the renewed motion for summary judgment of the defendant, McGraw Edison Co. The Court has heard argument and being otherwise advised, has determined that final judgment should be entered in favor of the said defendant. Findings have been made by separate order on this day. It is, therefore, the order of this court that:

Judgment be and is hereby entered in favor of Defendant McGraw Edison Co. and against Plaintiff, Florida Power and Light Co. and the said plaintiff shall take nothing by its suit against Defendant McGraw Edison Co.

It is further ordered that the third party action filed by Defendant McGraw Edison Co. against NGK–Locke, Inc. be and is hereby dismissed without prejudice. As the Court has determined that Plaintiff has no cause of action against Defendant McGraw, the basis for McGraw's third party action has been removed.